*38 It is stated, that in October, 1892, The Columbus Gas Light & Coke Company by and with the consent of the city transferred and assigned all its rights and interest in said privilege to the defendant, The Columbus Gas Company, which is now operating under the said privilege, and is and has enjoyed since the transfer all the benefits and privileges 'conferred upon The Columbus Gas Light & Coke Company by the said ordinance.
It is then averred that the said privileges were granted upon the condition that The Columbus Gas Light & Coke Company;, its successors and assigns, should annually pay to the city of Columbus for the benefit of the gas and light fund of the city the sum of $4,000, the first payment to be made at the time the ordinance took effect and the other payments to be made annually thereafter.
It is further averred that the maximum price which the company should sell its gas for the ten years next following the passage of the ordinance was fixed by the ordinance. It is then averred in compliance with the provisions of the contract The' Columbus Gas Light & Coke Company and The Columbus Gas Company paid to the city ten annual payments, and that the last payment was made on July 8, 1901, which amount was for the year beginning on July 1, 1901, and ending June 30, 1902, and that no further payments have been made, and that the two annual payments amounting to the sum of $8,000 are due and unpaid; that the defendant has neglected and refused to pay, and still refuses, although demand has been made therefor.
It is averred that for more than ten years last past the defendant has exercised and enjoyed the privileges granted and has been furnishing gas to the citizens of Columbus at the price fixed in the ordinance, and is now exercising and enjoying these privileges. And it is further stated that the city council has passed no ordinance fixing the price to be charged by'the defendant for gas other than the ordinance passed June 27, 1892. Then follows the prayer for the judgment against the defendant in the sum of eight thousand dollars with interest. To this petition the defendant, The Columbus Gas Company, has filed a general demurrer.
*39 The ease has been elaborately argued in the briefs furnished by counsel. Counsel for the defendant in a memorandum attached to the demurrer state that they rely upon the following principles: that the plaintiff has no power to exact a revenue from the defendant for the use of its streets; that the plaintiff holds whatever interest it has in the streets in trust for the’ people, and that the trustee has no right to use the trust property for its own benefit; that a municipal corporation has no pro-'prietary interest or rights in its streets for the use of which' it can exact compensation; that there was no consideration to support the requirement or condition of the contract which bound the defendant to pay to the city the sum of four thousand dollars annually.
It is further objected that the ordinance upon which the plaintiff bases its claim is void for the reason that it contains two separate and distinct subjects.
I think there can be no question of the correctness of the-defendant’s position that the city hás no power to exact or require a public service corporation, such as a gas company, to pay a portion of its earnings into the city treasury for the purpose of raising revenue. By dedication or condemnation the city obtained, it is true, the fee in its streets, but this it holds in trust for the benefit of the public and acquires no estate or' interest which it can sell. This is settled in this state by the decision in the case of Zanesville v. The Zanesville Telegraph & Telephone Company, 64 Ohio State, 67. If, therefore, it appears clearly from the averments of the petition that this exaction or requirement that the defendant pay into the city treasury the sum of four thousand dollars annually was imposed as a condition of the grant for the purpose of raising revenue for the city of Columbus, it can not be upheld and the city must fail unless the defendant be estopped to make this defense.
First. Does it clearly appear from the averments of the petition that it was intended for a revenue measure? It is argued that this clearly appears from the fact that it is provided that it be paid into the heating and lighting fund of the city. The further point is made that the ordinance specifically provides that the gas company shall relay and replace all pave *40 ments taken up and put them in as good condition as before they were taken up, and that it shall preserve the city harmless from all damages caused or expenses that may be incurred on account of anything done by the company, and to defend, all actions brought against the ' city by persons or corporations claiming damages on account of the creation or maintenance ©f the plant. This, it is said, requires the company to make good all losses which may arise from its creation and maintenance, and that the four thousand dollars must be purely for revenue purposes.
If this exaction on the part of the city of a sum to be paid annually into the city treasury can be upheld and the defendant compelled to pay, it must rest upon the principle that the sum so stipulated to be paid is a reasonable and proper exercise of the police power under the authority granted to the city by Section 3550 to grant the use of its streets to gas companies under such reasonable regulations as they prescribe. I am clear that this term “regulation” can not be so construed as to authorize municipalities to do what the Supreme Court says they have no right to do, to-wit, to sell to gas companies the right to use the streets as a source of revenue to the city. It is doubtful whether it is sufficient to authorize the city to exact the payment of a sum annually as a condition of the grant. It clearly empowered the city to impose such restrictions and conditions upon the company as to the use of the streets as would tend to protect the public from the danger incident to the construction and maintenance of its lines in the streets. But there is here no specific grant to the city of the right to exact the payment of any sum for any purpose. It is not a license for there is no provision in the statute law of the state which authorizes a municipal corporation to charge and collect a license fee of gas companies. I do not find any statutory warrant, therefore, for the requirement that the defendant should pay a stipulated sum to the city as a condition for granting to it the use of the streets.
I think, however, it will not be seriously questioned that the Legislature might very properly empower the city to require a gas company to pay into the city treasury annually or at some other stated interval' such sums as would provide such inspec *41 tion and supervision on the part of the city authorities as might be necessary to guard the public against the dangers arising from the manufacture and distribution of such an agency as gas. This would be a proper exercise of the police power. By dedication or condemnation, as I have said, the city obtains, it is true, a fee in the streets, but this it holds in trust solely for the benefit of the public. It does not thereby acquire anything which it can sell and thus derive a benefit to itself from the trust. It holds the streets in trust for the public, for use by the public as a highway. . But in the exercise of the police power I have no doubt that the Legislature could empower the city to collect from a gas company such a sum as would be reasonably sufficient to cover the expense to the city of proper inspection and supervision so as to properly carry out this trust and protect the public in the use of the streets against the dangers arising from the construction and maintenance of the defendant’s pipes-in the streets and alleys and other public places and houses of the city.
Now the defendant has been in the enjoyment of this franchise for more than ten years last past. For ten years it paid the sum provided for in the contract. It has at all times been in the enjoyment of the franchises granted and is now in the enjoyment of that franchise. Can it while in the enjoyment of this franchise or grant refuse to carry out the contract stipulation for the payment of this $4,000 per annum? In other words, is the defendant estopped in this ease to set up the want of power on the part of the city to require this condition so long as it continues to enjoy the franchise granted. Now it is clear, I think, that if this provision of the contract is for revenue, as I have said, that there can be no estoppel. Courts will never assist either party to enforce a contract which is against public policy and in my opinion it is against public policy to permit a municipal corporation to make a grant of the use of its streets for such a purpose, a source of revenue. As a trustee it is the duty of the city to obtain the best terms possible for the consumers of gas. This is inconsistent clearly with the requirement that * the gas company shall pay a portion of its receipts into the city treasury as a consideration for the grant. This revenue which *42 the city derives from the gas company must be paid by the consumers of gas, and the larger the sum exacted the larger the price that must be charged per thousand cubic feet of gas. It would be contrary to public policy to permit a municipal corporation to thus deal with its trust. For I think it would be just as clearly consistent with public policy to authorize a municipal corporation by legislative act to collect such a sum-as would be reasonably sufficient to provide for the proper inspection and to safeguard the public against the dangers of the use of gas. Against such a requirement, although the city may not be authorized by law to impose it, yet not being opposed to public policy, I think it does not lie in the mouth of the defendant while continuing to enjoy the franchise to object that the city did not have the right to require it. This is the distinction which the Supreme Court of Indiana makes in the case of Muncie Gas Company v. The City of Muncie, 60 Law Reports Annotated, 822. The rule is thus stated by Judge Gillett, in the opinion:
“Without attempting to cover the whole ground it may be said that if a contract is of such character that had the corporation at once proceeded to exact it, its act would have been contrary to public policy or expressly or impliedly prohibited by statute, or would in any degree. disable the corporation from the performance of its statutory duties, the undertaking can not be enforced by either party. To this extent the cases, English, federal and state are in reasonable harmony” (Citing cases).
On the other hand, we have a number of cases, commencing with the -leading case of State Board of Agriculture v. Citizens Street Railroad Company, 47 Indiana, 407; 17 American Reports, 72, in which it is held on the principle of equitable estoppel that where there is a mere defect of power upon the part of the corporation to enter into a contract the defendant while enjoying the benefit of the contract shall not be permitted to raise the question as to the power of the corporation. Citing cases.
“As to cases, however, of mere defects of power, we think it should be held in accordance with the clear weight of authority in the United States that while the defendant maintains the benefit of the contract the state alone can raise the question.”
*43 But it is said the contract’itself provides every safeguard in this case necessary to protect the public and that this is manifestly only a revenue measure. But, notwithstanding these provisions which require the defendant to put the streets again in good condition whén they are opened and to protect the city against damages which may result from the defendant’s operations in the city, the city as a trustee' of the public is not exempt by reason of this undertaking on the part of the defendant from seeing to it that its streets and alleys and other public places are kept safe for the public and in other ways to protect the public.
Section 2484, Revised Statutes, privides that:
“The council of any corporation in which gas works may be constructed, may provide, by ordinance, for the appointment of an officer, to be known as inspector of gas, whose duty it shall be to inspect all gas and gas meters, and certify the correctness of all bills against consumers of gas, make photometric tests, and perform such other duties as may be prescribed by ordinance; and the council shall fix his compensation. ”
Here is a provision for the expense of the salary of the officer and doubtless incidental expenses must be incurred. Gas, of course, is a dangerous element unless it be handled with care. In view of that fact Section 4238-2 provides that in the erection of buildings “the warming and lighting apparatus shall be arranged and constructed so as to be safe against explosion or fire. ’ ’
Section 2474 provides that—
“The city council may invest the fire engineer or any other officer of the fire or police 'department with the power, and impose on him the duty, to be present at all fires, investigate the cause thereof, examine witnesses and compel their attendance and production of books and papers,” etc.
And the next section provides that he may “enter for the purpose of examination any building which, in his opinion, is in danger from fire; and he shall report his proceedings to the council at such times as may be required.”
And Section 2476 provides that he shall receive such compensation as council may prescribe.
Here again is another provision for expenses to guard against fire for which gas unless handled with care is one of the common causes.
Butler, Keating & Marshall, for plaintiff.
DeWiit & Hubbard, for defendant.
Then there is the provision, Section 1545-207, for the appointment of a building inspector and a plumbing inspector. While he is not denominated in that act as it stood at the time of the making of this contract, inspector of plumbing and gas, by Section 1545-142 passed the same year that this contract was made, he is denominated inspector of plumbing and gas fitting. It is evident therefore as the law stood when this contract was made cities were authorized to make such inspection as to safeguard the public against the dangers arising in the use of gas, and that this imposed an expense upon the city, expenditure of money, to reimburse itself and as a purely police regulation I have no doubt that the Legislature might authorize' the city to collect such sum as would be reasonably sufficient to reimburse it for the expense of such inspection, and that such a law, if passed, would not be contrary to public policy but in accord with sound public policy; and in such case, therefore, I am of opinion that while it continues to enjoy the franchises, it is estopped to say that the city was without power to require payment of a sum reasonably sufficient to reimburse it for those necessary and proper expenses. What the amount of this expense might reasonably be expected to be at the time the contract was entered into can not be determined upon this submission but upon the principle that public officials are presumed to have performed their duty until the contrary is made to appear; I think the court can not assume upon this submission upon demurrer that the requirement for the payment of this money was intended as a source of revenue, and therefore against public policy, but rather as a requirement that the defendant should pay such a sum as would be reasonably necessary to provide this proper inspection which the law seems to provide and which would not be contrary to public policy. Johnson v. Philadelphia, 60 Penn. State, 445.
I think the ordinance contains only one subject, to-wit, the grant of the franchise on the use of the streets. The demurrer must, therefore, be overruled.